508 So.2d 365 (1987)
AMERICAN AUTOMOBILE ASSOCIATION, INC., Liberty Mutual Insurance Co., Jimmy Shoemake Doing Business As Beach & University Exxon Service Center, Nationwide Mutual Fire Ins. Co., and Gordon D. Hamilton, Appellants,
v.
Feraidoon TEHRANI and Aghdas Tehrani and Saad Lorestani and Zoreh Lorestani, Appellees.
Nos. BI-426, BI-442, BI-464, BI-471, BI-472 and BI-476.
District Court of Appeal of Florida, First District.
February 17, 1987.
On Motion for Rehearing June 12, 1987.
*367 Jack W. Shaw, Jr., P.A., and Frank W. Hession of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville, for appellants AAA and Liberty Mutual.
E. Robert Williams and Karen K. Cole of Boyd, Jenerette, Staas, Joos, Williams, Felton & Wirtz, Jacksonville, for appellants Shoemake and Nationwide.
William R. Swain of Webb, Swain & O'Quinn, P.A., Jacksonville, for appellant Hamilton.
James T. Terrell of Brown, Terrell, Hogan & Ellis, P.A., Jacksonville, and Robert P. Smith, Jr. of Hopping, Boyd, Green & Sams, Tallahassee, for appellees Tehrani.
James T. Terrell of Brown, Terrell, Hogan & Ellis, P.A., Jacksonville, and David S. Gould, New York City, for appellees Lorestani.
THOMPSON, Judge.
This is a consolidated appeal by the American Automobile Association, Inc. (AAA), and its insurance carrier; Jimmy Shoemake, doing business as Beach & University Exxon Service Center (Shoemake), and his insurance carrier; and Gordon D. Hamilton (Hamilton), defendants below, from judgments in favor of Feraidoon Tehrani (Tehrani) and Aghdas Tehrani and Saad Lorestani (Lorestani) and Zoreh Lorestani, plaintiffs below, and from orders denying all post-trial motions. The judgments appealed were entered pursuant to a jury's verdict finding defendants liable for injuries sustained by Tehrani and Lorestani in a vehicular accident involving a wrecker owned by Shoemake and operated by Hamilton and an automobile in which Tehrani and Lorestani were passengers. We reverse and remand for new trial.
Each of the defendants has assigned as error one or more of the following issues: Whether (1) the court erred in excluding the defendants' seat belt defense, (2) the court erred in submitting to the jury the question whether Shoemake was an agent of AAA, (3) the court erred in excluding evidence concerning the opinions of AAA and Shoemake about the nature of their business relationship, (4) the court erred in excluding from evidence the plaintiffs' tax returns, (5) the court erred in not excluding the testimony of police officers concerning what Shoemake and Hamilton told them about Hamilton's status as an employee of Shoemake, (6) the court erred in refusing to grant mistrial when the Lorestanis' attorney referred in his closing argument to testimony which had been previously stricken, (7) the court erred in refusing to sever Nationwide Insurance Company as a defendant, (8) the court erred in giving the plaintiffs' special requested jury instruction indicating that only "substantial" evidence was required to show the existence of an agency relationship, (9) the cumulative error rule requires reversal, and (10) the court erred in refusing to order remittitur. All defendants assert that the exclusion of the seat belt defense was error.
The automobile accident occurred during the early morning hours of August 21, 1982. Tehrani and Lorestani were passengers in a 1981 Toyota Corolla which was owned and being operated by Feraidon Parsi. According to Parsi's testimony he purchased the vehicle in December 1981, approximately *368 eight months prior to the accident, and the vehicle was in good condition at that time. He testified that the car was equipped with both front and rear seat belts but that he did not use the seat belts himself. Parsi had never specifically tested the seat belts to see if they worked, but he indicated that the front seat belts did "click." At the time of the accident Lorestani was riding in the front seat and Tehrani was riding in the rear seat. None of the car's occupants were wearing their seat belts. The wrecker operated by defendant Hamilton was driven into the path of the Parsi vehicle and the ensuing accident left the car's passengers severely and permanently injured.
At trial the defendants proffered expert testimony as to the effect that seat belt usage would have had on the plaintiffs' injuries. It was stipulated by all parties that the defendants' expert would testify that Lorestani and Tehrani would not have been so severely injured, and that their injuries would not have been permanent, had they been wearing their seat belts. Plaintiffs' attorney stated that he had an expert witness who would testify to the contrary. The trial judge refused to admit the proffered testimony and directed a verdict against the defendants on the seat belt defense. He held that the defendants had the burden of proving the seat belt defense, and that they had failed to do so as a matter of law.
We agree with the defendants' contention that the court erred in excluding their seat belt defense. The trial judge properly ruled that the defendants had the burden of proof on their affirmative seat belt defense. Insurance Co. of North America v. Pasakarnis, 451 So.2d 447 (Fla. 1984). However, he erred in finding that as a matter of law the defendants failed to carry this burden and in directing a verdict against the defendants on this defense. The uncontradicted evidence showed that the vehicle in question had been purchased approximately eight months before the accident and that it was in good condition when purchased. At the time of the accident the car was between one and two years old. It was equipped with seat belts both front and rear. According to Parsi, the seat belts in the front "clicked." It is admitted that neither Tehrani nor Lorestani was wearing a seat belt at the time of the accident, and the defendants proffered testimony that the injuries received by the plaintiffs would have been prevented or substantially reduced if they had been wearing seatbelts.
A directed verdict on a defense should be granted only when the trial judge finds that no evidence has been submitted upon which the jury could lawfully find for the defendant on that defense. Brantley v. Folmar, 54 So.2d 803 (Fla. 1951). The only element of the seat belt defense which was not admitted or established by uncontradicted evidence was whether the seat belts in Parsi's vehicle were operational. Although the evidence that this relatively new car in good condition was equipped with seat belts which "clicked" was not conclusive that the seat belts involved were operational, it was sufficient to raise a jury issue on this question. A trial judge should direct a verdict on a complaint or affirmative defense only if after viewing all the evidence in the light most favorable to the nonmoving party, he determines reasonable men could not arrive at a contrary determination. Myers v. Atlantic Coast Line Railroad Company, 112 So.2d 263 (Fla. 1959). The evidence in this case was sufficient to create a jury question on the issue of whether the seat belts involved were operational, and the trial court erred in removing this issue from consideration by the jury. Baker v. Firestone Tire & Rubber Co., 793 F.2d 1196 (11th Cir.1986).
Shoemake's business was a traditional type service station business which sold gasoline, oil and automobile related equipment, and serviced and repaired vehicles. In addition, the business offered emergency towing and road services both independently to the general public and through an affiliation with AAA. Shoemake owned two wreckers, both of which bore AAA insignia and were equipped with two-way *369 radios furnished and installed in the trucks by AAA.
Among the provisions of Shoemake's contract with AAA were terms requiring him to: (1) "maintain ... properly equipped service and tow trucks, operated and attended by competent service personnel" on a 24 hour per day, 365 day per year basis, (2) render emergency services for AAA members within 10 miles of his station and for up to 30 minutes of service time, (3) charge not more than $1.00 per mile for towing of members' cars in excess of 10 miles and not more than $16 per hour for service time spent in excess of 30 minutes, (4) furnish AAA members needed gasoline, oil, parts and non-emergency repair services at prices not to exceed prevailing rates, (5) respond promptly to service calls in a manner so as to reach AAA members' cars in the shortest possible time, (6) accept as "final" and "comply with" AAA's decisions as to the implementation of service policy with regard to individual service trips, (7) keep emergency service records in accordance with AAA's record keeping system, (8) permit AAA's designated representatives to inspect and approve any work done for and the prices charged to AAA members who might ask Shoemake to perform repair work over and above the emergency services provided, and accept the designated representative's decision on such matters, and (9) indemnify and hold harmless AAA from claims based on the negligence, incompetence or dishonesty of Shoemake or his employees. The contract required AAA to pay Shoemake a flat rate for each AAA service call he made and further expressly provided that Shoemake was an independent contractor and that AAA would not have "any right of control as to the manner, method or means employed ... in the rendering of ... service."
A representative of AAA testified that he regularly inspected Shoemake's wreckers and place of business, and that if dissatisfied with the condition of a wrecker or the performance of one of the service station's wrecker-driver employees, he could have prevented the wrecker or employee from being sent on AAA calls. Shoemake's manager testified that AAA had exclusive control of dispatching AAA service calls, and that on occasions when AAA members called the station directly, either the member or the station would still have to call AAA and have the service dispatched by AAA before the station could handle the request as a AAA call. The trial judge excluded proffered testimony by the AAA representative and by Shoemake that Shoemake was an independent contractor and not an agent of AAA.
We find no error in the court's submitting to the jury the question whether Shoemake was an agent of AAA because, as set forth above, the evidence on the question of agency was sufficient to create a jury question on this issue. Although the evidence on the question whether Shoemake was an agent of AAA was not conclusive, it, like the evidence on the question of the seat belt defense, was sufficient to create an issue for the jury.
The court did err, however, in refusing to allow Shoemake and the AAA representative to testify as to the nature of their business relationship. In determining the relationship of the parties and whether one is an agent, servant or employee or whether he is an independent contractor, testimony by the parties as to the nature of the relationship is admissible. § 90.703, Fla. Stat.; Moles v. Gotti, 433 So.2d 1380 (Fla. 2d DCA 1983). The testimony of Shoemake and of AAA's corporate representative as to the nature of their relationship was relevant to that issue, and the jurors should have been permitted to consider that testimony.
In view of the fact that this case is being reversed and remanded for new trial we will briefly dispose of the remaining issues which have not become moot.
The court erred in excluding the plaintiffs' tax returns from evidence when offered by the defendants. The tax returns were not material to prove the earnings of the plaintiffs because they abandoned their claim for loss of earnings. However, the plaintiffs had testified to loss of earnings prior to abandoning the claim *370 for lost wages and the tax returns were admissible to impeach their credibility as witnesses.
It was error for the trial court to admit the testimony of police officers concerning what Shoemake and Hamilton told them during their accident investigation with regard to the relationship between Shoemake and Hamilton. Although error, this error was harmless because Shoemake admitted in answers to interrogatories that Hamilton was an employee.
The trial court did not err in refusing to grant a mistrial when Lorestani's attorney, in his closing argument, referred to testimony which had previously been stricken. The reference to the stricken testimony did not warrant so drastic an action as granting mistrial. The court did err, however, in refusing to give a cautionary instruction to the jury to disregard that portion of the argument based on the stricken testimony.
We find no abuse of discretion by the trial judge in refusing to sever Nationwide Insurance Company as a party defendant.
The court erred in giving plaintiffs' special requested jury instruction indicating that only "substantial" evidence was required to show the existence of an agency relationship. Only Shoemake raised this issue on appeal. As it affected only the liability of AAA the error in respect to Shoemake is harmless.
The consolidated cases are reversed and remanded for new trial.
REVERSED.
JOANOS and NIMMONS, JJ., concur.

ON REHEARING
THOMPSON, Judge.
Most of the arguments put forward by appellees Tehrani and Lorestani in their motions for rehearing are impermissible reargument. The appellees' remaining arguments have been considered and found to be without merit. These issues include Tehrani's argument that our 1986 Legislature's passage of the Florida Safety Belt Law, § 316.614, Fla. Stat. (Supp. 1986), should somehow establish or control the parameters of the Pasakarnis "seat belt defense." The Pasakarnis case, which was decided before the seat belt law was enacted, held that a "seat belt defense" was viable in Florida even though no safety belt law existed. The Pasakarnis court said:
If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced.
451 So.2d at 454. As a matter of logic this rule must necessarily apply to a failure to use any available seat belt in a car, not merely those in the front seat. Even if logic and common sense did not require this result the fact would remain that the entry in the 1986 Journal of the Florida House of Representatives which records the passage of the Safety Belt Law includes a specific statement of legislative intent not to alter the Pasakarnis rule. Thus the enactment clearly cannot operate to preclude application of the Pasakarnis rule to rear seat passengers as well as to front seat passengers. We also reject appellees' contention that our opinion included a holding that the evidence presented was sufficient to establish as a matter of law that the seat belts in Parsi's vehicle were operational. We held only that the evidence was sufficient to create a jury question on the issue.
With respect to the motion for rehearing filed by the appellant AAA, we agree that in our original opinion we neglected to address the issue of alleged trial court error in permitting the jury to consider whether AAA should be held liable to plaintiffs on the theory that the operation of Shoemake's large wrecker was an ultrahazardous activity, and that a finding of liability on the part of AAA might therefore be warranted regardless of whether *371 Shoemake was determined to be an agent of AAA or an independent contractor. We find and hold that in the context of this case the activity of operating the large wrecker was neither an "ultrahazardous activity" nor an "inherently dangerous activity" as these terms are explicated in the Restatement (Second) of Torts, §§ 416, 427 and 520, and that the jury should not have been instructed on this matter nor permitted to consider it.
With the exception of these modifications to our original opinion, the motions for rehearing are denied.
JOANOS and NIMMONS, JJ., concur.